KEENAN, Appellant,

v.

HUNTINGTON ACCEPTANCE COMPANY, Appellee.

[Cite as *Keenan v. Huntington Acceptance Co.* (1993), 91 Ohio App.3d 795.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 62879.

Decided Nov. 15, 1993.

796

*Nwabueze V. Okocha,* for appellant.

*Strachan, Green, Miller, Olender & Hobt* and *William R. Strachan,* for appellee.

HARPER, Judge.

Plaintiff-appellant, Donald Keenan, filed a complaint in the Court of Common Pleas of Cuyahoga County on May 18, 1990, seeking compensatory and punitive damages for alleged violations of the Federal Truth in Lending Act and Pennsylvania and Ohio consumer laws with regard to the purchase and financing of a motor vehicle. Appellant now appeals from the granting of summary judgment in favor of defendant-appellee, Huntington Acceptance Company ("Huntington"), on his complaint and on the counterclaim of Huntington.

I

On May 31, 1989, appellant entered into a Pennsylvania Motor Vehicle Install-ment Contract ("the contract") with Bob Smith Ford, Inc., an automobile dealership located in Castle Shannon, Pennsylvania, for the purchase of a 1989 Ford Mustang ("the vehicle"). The contract set forth that the purchase price of the vehicle was $14,634.80. After deducting appellant's down payment of $816.94, the balance of the purchase price was financed over a sixty-six month term with sixty-five monthly payments of $312.93 and one final payment of $313.45. Appel-lant was thereby obligated to make these payments commencing July 15, 1989 and continuing on the fifteenth day of each month thereafter until the final payment date of December 15, 1994. The contract further disclosed the following information: annual percentage rate of 13.50 percent; finance charge of $6,212.04; the amount financed, $14,441.86; total payments of $20,653.90; and the total sale price, $21,470.84.

Subsequent to the execution of the contract, Bob Smith Ford, Inc. assigned it to Huntington. Huntington is a wholly owned subsidiary of Huntington Banc-shares Incorporated. Although it is incorporated in Ohio, according to its president, William J. Coombs, Huntington was formed principally for the purpose of engaging in the business of motor vehicle sales financing in Pennsylvania. Moreover, since July 1988, Huntington has been a duly licensed sales financing company under the Pennsylvania Motor Vehicle Sales Finance Act with its principal place of business in Pittsburgh, Pennsylvania. It does not engage in, nor has it ever engaged in, any vehicle financing transactions outside that state.

Appellant complied with the monthly payment schedule between July 17, 1989 and April 10, 1990, making ten payments to Huntington and leaving an unpaid balance of $12,918.92. Appellant, however, notified Huntington in a letter dated April 26, 1990 that he "elects to rescind the consumer credit transaction (includ-ing all contracts and instruments which are a part of the transaction) * * *." The notice was forwarded to Huntington pursuant to Federal Reserve Regulation Z ("Reg. Z") and appellant testified during his deposition that he premised the rescission on the allegedly inaccurately disclosed annual percentage rate, the finance charge and the total of payments disclosed in the contract. An earlier overheard conversation prompted appellant to calculate his "actual interest rate" of 13.73 percent, .23 percent greater than that disclosed by appellant, 13.50 percent. Therefore, he concluded that the cost of his loan was $200 greater than the amount disclosed in the contract as the total amount of payments. Appellant thus requested the return of "all money and property given as earnest money, downpayment or otherwise and to take all other action necessary or appropriate to give effect to the rescission (including the return of all consideration, of every

kind and character, to the party entitled thereto)." In addition, appellant ceased making his monthly payments to Huntington.

In his complaint, appellant set forth five causes of action. First, he claimed that appellee violated the disclosure requirements of the Truth in Lending Act, Section 1601 *et seq.*, Title 15, U.S.Code ("TILA"), and Reg. Z, Section 226.1 *et seq.*, Title 12, C.F.R., by failing to disclose: (1) the accurate amount financed; (2) the accurate finance charge; (3) the accurate annual percentage rate; and (4) the accurate total of payments. Second, appellant alleged that the contract is usurious and unenforceable pursuant to the Ohio Retail Installment Sales Act, R.C. 1317.01 *et seq.*, and the "Pennsylvania Motor Vehicle Installment Sales Act." Third, Huntington knowingly committed deceptive, oppressive and unconscionable acts and practices in violation of Ohio R.C. 1345.02 and 1345.03. Fourth, appellant maintained that Huntington willfully, recklessly, maliciously and oppressively breached the implied covenant of good faith and fair dealing owed to him. Finally, he claimed that Huntington's actions were willful and malicious as "their conduct was intended to cause injury to plaintiff or were carried on with a conscious disregard of plaintiff's rights * * *." As a result of these claims, appellant prayed for compensatory and punitive damages as well as attorney fees pursuant to Section 1640(a), Title 15, U.S.Code and Ohio R.C. 1345.09.

Huntington thereafter filed its answer and a counterclaim on November 29, 1990. In the counterclaim, Huntington sought to recover the payments under the contract and possession of the vehicle in accordance with the contract's default provisions.

Huntington later filed a motion for summary judgment on May 10, 1991. On June 10, 1991, appellant filed a motion for enlargement of time in which to respond to Huntington's motion. The trial court extended appellant's response time to August 1, 1991 pursuant to his request. Appellant failed to file a brief in opposition by this date.

On August 14, 1991, the trial court granted Huntington's motion for summary judgment on appellant's complaint. Huntington's counterclaim was set for hearing on August 30, 1991. The journal entry which set forth these dispositions did not contain any "no just reason for delay" language as provided for in Civ.R. 54(B).

Appellant filed a Civ.R. 60(B) motion for relief from judgment on August 29, 1991. Therein, appellant's counsel claimed that the brief in opposition to Huntington's motion for summary judgment was prepared but inadvertently lost in his office and just recently found by him. The brief in opposition was attached to the Civ.R. 60(B) motion. Appellant argued that he was entitled to relief from judgment based upon excusable neglect, *i.e.*, counsel's failure to timely file the

brief in opposition, and a meritorious defense presented in his brief. The trial court overruled the Civ.R. 60(B) motion on October 8, 1991.

On November 21, 1991, the trial court issued its final judgment in favor of Huntington on its counterclaim and appellant's complaint. It awarded possession of the 1989 Ford Mustang to Huntington. In addition, Huntington was awarded a judgment in the amount of $19,521.10. The judgment was composed of the unpaid principal balance of $12,918.92; plus accrued and unpaid interest in the amount of $2,671.01, calculated on an unpaid principal balance to charges in the amount of $112.65 also due on the contract; plus an allowance of $3,140.52 for attorney fees and litigation costs and expenses in the amount of $687.[1]

This appeal followed with appellant raising as error:

"I. The trial court committed prejudicial error in granting summary judgment inasmuch as there are genuine issues of material fact.

"II. The trial court committed prejudicial error by enforcing an agreement that was rescinded and therefore nonexistent.

"III. The trial court committed prejudicial error by holding an *ex parte* hearing on the damages, which deprived the plaintiff of notice and a hearing renders the damage award null and void.

"IV. The trial court abused its discretion by denying plaintiff's motion and relief from judgment without a hearing when plaintiff has clearly demonstrated through unchallenged testimony that he has a meritorious claim.

"V. The judgment of the trial court is excessive and violates plaintiff's due process as guaranteed in both the Constitutions of the United States and the state of Ohio."

## II

Appellant presents a four-part argument in his first assignment of error in which he submits that the trial court erred in granting summary judgment in favor of Huntington. Specifically, he claims that there were genuine issues of material fact with regard to Huntington's alleged violation of TILA, the Ohio Consumer Sales Practices Act, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and with regard to its conduct which constituted bad faith and a breach of the implied covenant of good faith and fair dealing.

In order for summary judgment to be granted pursuant to Civ.R. 56(C), it must be determined that: (1) there is no genuine issue of material fact to be

---

1. We note that there is a discrepancy of $9 between the total amount awarded to Huntington, $19,521.10, and the actual total of these figures, $19,530.10.

litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion which is adverse to the nonmoving party when construing the evidence most strongly in favor of that party. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 327, 587 N.E.2d 825, 827, quoting *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471, 364 N.E.2d 267, 273. In reviewing the granting of summary judgment, an appellate court must apply the same standard as the trial court. *Temple, op. cit.*

■ Moreover, a moving party has the burden to persuade the court that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278 (Brennan, J., dissenting); *Paul v. Uniroyal Plastics Co.* (1988), 62 Ohio App.3d 277, 281, 575 N.E.2d 484, 486. The nonmoving party may not then rely on his pleadings in response to a motion for summary judgment if he bears the burden of proof at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095 (*Celotex*, approved and followed); *Paul, supra,* at 282, 575 N.E.2d at 487. Rather, the nonmoving party must submit evidence, as enumerated in Civ.R. 56(C), to justify a conclusion by the trial court that a reasonable jury could render a verdict in his favor. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 255–256, 106 S.Ct. 2505, 2513–2514, 91 L.Ed.2d 202, 216–217; *Paul, op. cit.;* see, also, *Pittsburgh Press Co. v. Cabinetpak Kitchens of Columbus* (1984), 16 Ohio App.3d 167, 16 OBR 176, 475 N.E.2d 133; *Siegler v. Batdorff* (1979), 63 Ohio App.2d 76, 17 O.O.3d 260, 408 N.E.2d 1383; *Reynoldsburg Motor Sales, Inc. v. Columbus* (1972), 32 Ohio App.2d 271, 61 O.O.2d 310, 289 N.E.2d 909.

Finally, even if a nonmoving party fails to supply evidence to the trial court as outlined *supra,* the movant must still demonstrate that he is entitled to judgment as a matter of law. *Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.* (1991), 61 Ohio St.3d 607, 575 N.E.2d 1164; *Glick v. Dolin* (1992), 80 Ohio App.3d 592, 609 N.E.2d 1338.

## A

Appellant initially asserts that Huntington violated TILA by failing to accurately disclose the amount financed, the finance charge, the annual percentage rate ("APR"), and the total payments in its contract with him. He argues that the figures were not calculated and presented in accordance with TILA, Section 1638(a), Title 15, U.S.Code and Reg. Z, Sections 226.4 and 226.18, Title 12, C.F.R.

■ TILA ensures that meaningful disclosures are made in consumer credit transactions. As stated in Section 1601(a), Title 15, U.S.Code, the purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer

will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit * * *."

"Material disclosures" is defined in Section 1602(u), Title 15, U.S.Code, as:

" * * * the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, and the due dates or periods of payments scheduled to repay the indebtedness."

The contract at issue in the present case is a "closed-end credit transaction," which is defined in Reg. Z, Section 226.2(a)(10), Title 12, C.F.R., as a transaction other than an open-ended consumer credit transaction.[2] The disclosure requirements for closed-end credit transactions are found in TILA, Section 1638, Title 15, U.S.Code, and Subpart C of Reg. Z, Closed–End Credit.

Section 1638(a)(2)(A), Title 15, U.S.Code, and Section 226.18(b), Title 12, C.F.R., specify that the amount financed is to be calculated by first determining the principal loan amount or cash price minus the down payment. To this sum are added any other amounts that are financed by the creditor but are not part of the finance charge. Any prepaid finance charge is then subtracted from this figure.

In addition to the contract, Huntington attached evidentiary materials to its motion for summary judgment. Included were an affidavit from Steven D. Hite, vice-president and manager of Consumer Credit Operations of the Huntington National Bank in Columbus, Ohio; an amortization schedule for the loan transaction at issue; and a transactional history which illustrates appellant's payments to Huntington.

The contract herein establishes that the cash price of the vehicle was $14,634.80 less the down payment of $816.94 or $13,817.86. The sums of $555 (extended manufacturer's warranty), $15 (certificate of title fee), $24 (registration fee), $5 (encumbrance fee), and $25 (notary fee) were added to this figure to arrive at the amount financed of $14,441.86. Since there were no prepaid finance charges, the amount financed remained at $14,441.86. The contract accurately sets forth this figure.

Closed-end consumer credit transactions further require the accurate disclosure of the finance charge or the consumer's cost of credit. Section 1638(a)(3),

---

2. An open-ended consumer credit transaction is one where the creditor reasonably contemplates repeated transactions; may impose a finance charge from time to time on an outstanding unpaid balance; and allows the extension of credit to the consumer during the term of the plan to the extent that any outstanding balance is repaid. Reg. Z, Section 226.2(a)(20), Title 12, C.F.R.

Title 15, U.S.Code; Section 226.18(d), Title 12, C.F.R. "Finance charge" is defined in Section 226.4(a), Title 12, C.F.R. as a dollar amount, including:

" * * * any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction."

Therefore, if itemized and disclosed, taxes and fees prescribed by law that are to be or will be paid to public officials for the perfection, release or satisfaction of a security interest are excludable from the finance charge. Section 226.4(e), Title 12, C.F.R.

According to the contract and the amortization schedule, the interest to be paid by appellant on his loan would amount to $6,212.04. The cost of the extended manufacturer's warranty, and the title, registration and notary fees, did not need to be included in the calculation of the finance charge because they were not incident to or a condition of obtaining the loan. Section 226.4(e), Title 12, C.F.R. The interest on the loan was thereby the only cost that needed to be disclosed in the contract as the finance charge and the contract did so state the interest as the finance charge. Even if the $5 encumbrance fee were to be added to this figure, Section 226.13(d), Title 12, C.F.R. allows a $10 discrepancy.

A closed-end consumer credit transaction further requires the disclosure of the total of payments after all scheduled payments have been made by the consumer. Section 1638(a)(5), Title 15, U.S.Code; Section 226.18(h), Title 12, C.F.R. The contract set forth that appellant was required to make sixty-five monthly payments of $312.93 and one final payment of $313.45. The sum of these payments equals $20,653.90 (65 times $312.93 plus $313.45). The contract accurately sets forth this amount as the total payment after appellant was to make his last payment.

Appellant's final allegation is that the contract inaccurately identifies the APR. Disclosure of the APR is required in a closed-end consumer credit transaction. Section 1638(a)(4), Title 15, U.S.Code; Section 226.18(e), Title 12, C.F.R. "APR" is defined in Section 1606(a)(1), Title 15, U.S.Code as:

"(A) that nominal annual percentage rate which will yield a sum equal to the amount of the finance charge when it is applied to the unpaid balances of the amount financed, calculated according to the actuarial method of allocating payments made on a debt between the amount financed and the amount of the finance charge, pursuant to which a payment is applied first to the accumulated finance charge and the balance is applied to the unpaid amount financed; or

"(B) the rate determined by any method prescribed by the Board as a method which materially simplifies computation while retaining reasonable accuracy as compared with the rate determined under subparagraph (A)."

Section 226.22, Title 12, C.F.R. lists three methods for determining the accuracy of a disclosed APR. The accuracy may be tested in accordance with the actuarial method or the United States Rule ("U.S. Rule") method. Section 226.22(a), Title 12, C.F.R. The third method uses the Annual Percentage Rate Tables produced by the Federal Reserve Board. Section 226.22(b), Title 12, C.F.R.

Hite, in his affidavit, set forth the U.S. Rule method for the calculation of TILA disclosures of the APR in closed-end consumer credit transactions. He additionally provided that the amortization schedule was prepared in accordance with the described U.S. Rule method using a contract interest rate of 13.50 percent.

The U.S. Rule method first requires that the daily rate of interest be calculated by dividing the rate of interest by 365 days, or 366 days if the year of calculation is a leap year. The daily rate is then multiplied by the unpaid balance of the amount financed to determine the per diem finance charge. The per diem finance charge is then multiplied by the number of days between the contract date and the first payment due date to determine the first payment. For subsequent payments, the per diem finance charge is recalculated to account for payment on principal and then is multiplied by the number of days between scheduled payment due dates.

Applying this formula to the instant case figures, the following results:

| | | |
|---|---|---|
| Daily rate: | .000369863 | (.1350 interest rate divided by 365 days in the contract year) |
| Per Diem Finance Charge: | 5.3415096 | (.000369863 multiplied by $14,441.86, the amount financed) |
| First Interest Payment: | $240.36 | (5.3415096 multiplied by 45 days) |

Since appellant's monthly payment for the first month was $312.93, $72.57 was to be applied toward the principal, whereas the remaining $240.36 was to be applied toward interest. The remaining monthly payments were then distributed toward principal and interest as calculated by using the recalculated per diem finance charge based upon the principal amount remaining as reduced by the principal payment for the previous month. Assuming appellant would have made all sixty-six payments under the contract in a timely manner, the principal balance on his loan would have been reduced to zero by the final payment date of December 15, 1994. The contract thus reveals an accurate APR in conformity with the requirements of TILA and Reg. Z.

Appellant's failure to respond to Huntington's motion for summary judgment and his failure to submit evidence which challenged Huntington's evidence that an APR of 13.50 percent was used, and not 13.73 percent as urged by appellant, leads this court to conclude that the trial court properly granted summary judgment in favor of Huntington on appellant's complaint. The accurate disclosure of the amount financed, the finance charge, the APR and the total amount of payment disallows any claim by appellant that Huntington violated any provision of TILA or Reg. Z.

## B

Appellant next proposes that the contract violates the usury provisions of Ohio and Pennsylvania law. Retail installment sales, including motor vehicle sales, are governed by R.C. Chapter 1317, the Ohio Retail Installment Sales Act ("ORISA"), in Ohio. In Pennsylvania, such sales are regulated in part by the Goods and Services Installment Sales Act, 69 Penn.Stat. 1201 *et seq.* The Goods and Services Installment Sales Act, however, does not apply to sales of motor vehicles, which are governed by the Motor Vehicle Sales Finance Act, 69 Penn.Stat. 601 *et seq.* ("Motor Vehicle Act"). 69 Penn.Stat. 1201(1).

Ohio follows the rule that where a conflict of law issue occurs in a contract case, the law of the state where the contract is to be performed applies. *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.* (1983), 6 Ohio St.3d 436, 6 OBR 480, 453 N.E.2d 683. The contacts to be taken into account where the parties to a contract do not designate choice of law include: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Gries Sports Enterprises v. Modell* (1984), 15 Ohio St.3d 284, 15 OBR 417, 473 N.E.2d 807, syllabus, citing 1 Restatement of the Law 2d, Conflict of Laws (1971), Section 188.

In the present case, appellant negotiated and signed the contract in Pennsylvania at Bob Smith Ford, Inc. located in Castle Shannon, Pennsylvania. Appellant resided in that state at the time he signed the contract entitled "Pennsylvania Motor Vehicle Installment Sale Contract." Although Huntington is incorporated in Ohio, it is licensed as a sales finance company under the Pennsylvania Motor Vehicle Sales Finance Act and conducts its motor vehicle sales financing exclusively in that state. Finally, appellant made all his payments under the contract at Huntington's Pittsburgh office. As a result, this court finds that the contract is not susceptible to the application of ORISA. *Gries Sports Enterprises.*

The contract is, however, susceptible to the Motor Vehicle Act as stated, *supra*. 69 Penn.Stat. 619 provides in pertinent part:

"Section 619. Finance charges

"A. A seller licensed under the provisions of this act shall have the power and authority to charge, contract for, receive or collect a finance charge, as defined in this act, on any installment sale contract covering the retail sale of a motor vehicle in this Commonwealth, which shall not exceed the rates indicated for the respective classification of motor vehicles as follows:

"Class I. New motor vehicles, * * * eighteen percent (18%) simple interest per year on the unpaid balance."

Appellant was being charged an annual interest rate of 13.50 percent on his Pennsylvania contract, a rate permitted by the Motor Vehicle Act. There is thus no violation of the Act's provisions relating to usury.

## C

Appellant next repeats that Huntington knowingly misstated the disclosures required by TILA and Reg. Z. Consequently, he argues that these misstatements violated the provisions of the Ohio Consumer Sales Practices Act, R.C. Chapter 1345.

We found that the contract is not regulated by Ohio law and appellant did not claim in his complaint that the contract violates similar legislation in Pennsylvania, the Unfair Trade Practices and Consumer Protection Law, 72 Penn.Stat. 201 *et seq.* Moreover, considering we found that Huntington accurately disclosed the information required by TILA and Reg. Z, *supra*, appellant's arguments are moot. See App.R. 12(A)(1)(c).

## D

Finally, appellant maintains that Huntington willfully, recklessly, maliciously and oppressively breached the implied covenant of good faith and fair dealing by not accurately disclosing required information. In addition, these actions were willful and malicious and were intended to cause injury to him and were carried on with a conscious disregard of his rights. These allegations are moot in light of our finding that Huntington complied with TILA and Reg. Z requirements, and that the APR of 13.50 percent is a valid interest rate under Pennsylvania law.

## E

As a final note, we acknowledge that appellant attached a brief in opposition to Huntington's motion for summary judgment to his Civ.R. 60(B) motion. The trial

court had this untimely filed brief in its possession prior to entering final judgment in favor of Huntington. Assuming *arguendo* that the trial court reviewed the brief and the incorporated documents as allowed under Civ.R. 54(B), including portions of the depositions of Huntington personnel and amortization schedules, it would not have erred in finding no genuine issues of material fact for litigation.

◼ First, it is well settled that the proper procedure for the introduction of evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate the material by reference into a properly formed affidavit. *Martin v. Cent. Ohio Transit Auth.* (1990), 70 Ohio App.3d 83, 89, 590 N.E.2d 411, 415; *Biskupich v. Westbay Manor Nursing Home* (1986), 33 Ohio App.3d 220, 222, 515 N.E.2d 632, 634. A court may then consider the material if no objection is raised by the opposing party. *Id.*

◼ In the present case, appellant attached two amortization schedules to his brief, one which allegedly demonstrated Huntington actually applied an interest rate of 13.73 percent to his loan rather than the interest rated stated in the contract, 13.50 percent. At least, appellant hoped to illustrate a genuine issue of material fact as to the accuracy of this disclosure. Appellant's attorney attested to the authenticity of these schedules in his affidavit. A review of the record, however, reveals that there is no indication whatsoever as to when they were prepared or who prepared them. The relevancy to be afforded these documents is thus susceptible to extreme doubt and leads us to conclude that even if they were taken into consideration in determining whether summary judgment was a proper disposition of this case, the outcome would remain the same.

Second, appellant avers that William J. Coombs, Hardley Martin Marietta, and James Starbuck, all Huntington personnel, testified in their depositions that the actual APR being charged appellant on his loan was 13.73 percent. Appellant either misreads or misinterprets the deposition testimony, because not one of these three witnesses testified to this allegation.

Coombs was asked by appellant's counsel to identify appellant's Exhibits 2 and 3, the amortization[3] schedules with which appellant sought to establish the APR applied to his loan. Exhibit 2 illustrated a principal of $14,441.86; loan payment period of sixty-six months; monthly payment of $311.19; and an APR of 13.50 percent. Exhibit 3 portrayed the same principal and payment period but showed

---

3. Starbuck provided the following definition of "amortization" in his deposition: "To amortize a loan is to take a given loan amount at a given rate of interest at a given payment schedule, and if you apply the payments received at the interest rate called for in the loan, at the period that is called for in the loan, at the maturity date or at the end of the term of that loan transaction, the loan balance should be zero."

a monthly payment of $312.93 and an APR of 13.73 percent. Coombs testified that he never saw either of these documents prior to his deposition. Moreover, when questioned as to whether he had any problem with the computations in Exhibit 2, he replied, "I have no way to have a problem one way or the other because I don't know how it was produced or who produced it." Coombs subsequently testified merely that the APR listed on Exhibit 3, 13.73 percent, was .23 percent greater than the APR listed on appellant's contract with Huntington. He did not testify that Huntington charged the higher interest rate as claimed by appellant.

Marietta was also shown the two amortization schedules as Exhibits 1 and 2 at his deposition. He testified that both of the exhibits appeared to be amortization schedules, but cautioned that he could not testify as to their validity or their accuracy. Specifically, with regard to Exhibit 1, the document which showed an APR of 13.50 percent, Marietta testified that he could not dispute the figures without more information. He next verified that Exhibits 1 and 2 illustrated two interest rates, the difference being .23 percent; and that the APR listed in Exhibit 2, 13.73 percent, was .23 percent greater than the APR listed in appellant's contract. Once again, however, this witness did not testify that Huntington charged appellant the greater APR.

Finally, Starbuck likewise confirmed that appellant's Exhibits 1 and 2 illustrated two interest rates using the same principal and payment period but different monthly payments. He also corroborated that Exhibit 2 and Exhibit 3, appellant's contract, depicted two interest rates with a .23 percent difference. Starbuck, however, did not testify that Huntington charged the higher interest rate on appellant's loan.

Viewing this evidence in a light most favorable to appellant, we find that reasonable minds could come to but one conclusion that appellant failed to demonstrate a genuine issue of material fact through the unauthenticated amortization schedules and the depositions. The trial court thus did not err in granting summary judgment in favor of Huntington.

Appellant's first assignment of error is overruled.

### III

Appellant contends in his second assignment of error that the August 26, 1990 letter to Huntington apprised it of the rescission of the contract under TILA and Reg. Z. Since the loan agreement was thereby extinguished, appellant argues that the trial court erred in finding him liable on the contract.

TILA, Section 1635, Title 15, U.S.Code, sets forth:

"Right of rescission as to certain transactions

"Disclosure of obligor's right to rescind. Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest * * * *is or will be retained or acquired in any* * * *property* which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction * * *." (Emphasis added.)

Herein, appellant was not entitled to rescind the contract under Section 1635, Title 15, U.S.Code, because the sale involved a motor vehicle rather than real property. "Once a contract is entered into, notice [rescission] unsupported by law may not be utilized to excuse performance without liability." *Am. Bronze Corp. v. Streamway Products* (1982), 8 Ohio App.3d 223, 8 OBR 295, 456 N.E.2d 1295. Even if inaccurate disclosures pertaining to the sale of a motor vehicle allowed for a rescission of the contract, Huntington's proper disclosure of the information required by TILA and Reg. Z would preclude a valid rescission.

Appellant's second assignment of error is overruled.

## IV

Appellant, in his third assignment of error, argues that the trial court's failure "to serve notice on [him] and conduct a hearing on this matter frustrates the purpose of law and justice." He suggests that, in the absence of a hearing, the trial court should not have proceeded to final judgment and its judgment is thus void and invalid.

Appellant is apparently under the mistaken impression that for every lawsuit filed, a trial court is obliged to conduct a hearing before entering final judgment. If a party files a motion for summary judgment pursuant to Civ.R. 56, the rule does not mandate that the court hold an oral hearing even if a party requests one. *Brown v. Akron Beacon Journal Publishing Co.* (1991), 81 Ohio App.3d 135, 610 N.E.2d 507; *Potter v. Troy* (1992), 78 Ohio App.3d 372, 604 N.E.2d 828; *Gates Mills Invest. Co. v. Pepper Pike* (1978), 59 Ohio App.2d 155, 13 O.O.3d 191, 392 N.E.2d 1316. Furthermore, Local R. 11(I) of the Court of Common Pleas of Cuyahoga County specifies that:

"(I) Unless otherwise ordered by the Court, motions for summary judgment shall be heard on briefs and other materials authorized by Civil Rule 56(C) without oral arguments. The adverse party may file a brief in opposition with accompanying materials, within thirty (30) days after service of the motion."

The "hearing" referred to may only thus consist of the submission of evidentiary materials for the court's review. *Brown*, 81 Ohio App.3d at 138, 610 N.E.2d at 509; see, also, *Anchorage Assoc. v. Virgin Islands Bd. of Tax Rev.* (C.A.3, 1990), 922 F.2d 168, 176; *Geear v. Boulder Community Hosp.* (C.A.10, 1988), 844 F.2d

764, 766.[4] Civ.R. 56(C) furthermore does not require notice be provided him with regard to the court's intention to issue a ruling. *Brown*, 81 Ohio App.3d at 139, 610 N.E.2d at 510; see, also, *Daniels v. Morris* (C.A.5, 1984), 746 F.2d 271, 274–275; *Grigoleit Co. v. United Rubber, Cork, Linoleum & Plastic Workers of Am.* (C.A.7, 1985), 769 F.2d 434, 437–438.

Appellant cannot deny that he received notice of Huntington's filing of its motion for summary judgment; he sought an extension in which to respond to the motion. The trial court granted appellant an extension. A brief in opposition was not filed by the due date, and the court entered judgment in favor of Huntington on appellant's complaint, said judgment becoming final in November 1991. Appellant was afforded the notice required by Civ.R. 56(C) and Local R. 11(I). Appellant does not even allege that he was denied these basic procedural guarantees. See *Brown*, 81 Ohio App.3d at 139, 610 N.E.2d at 510.

Moreover, a review of the record reveals that the trial court possessed sufficient evidentiary materials for determining damages. Huntington attached a transactional history to its motion for summary judgment which illustrated appellant's payments. Appellant did not respond by offering any evidence which challenged the accuracy of this history.

Nonetheless, this court finds that the record fails to establish the accuracy of the attorney fees awarded to Huntington. The contract does provide that if Huntington chose to pursue legal recourse as a result of default, it could recover twenty percent of its attorney fees or $500, whichever is greater, and litigation costs associated with the action. See, also, 69 Penn.Stat. 623(C). We, therefore, remand this action to the trial court in order for a hearing to be conducted on this issue alone. Cf. *Swanson v. Swanson* (1976), 48 Ohio App.2d 85, 2 O.O.3d 65, 355 N.E.2d 894; *Perry v. LTV Steel Co.* (1992), 84 Ohio App.3d 670, 618 N.E.2d 179; *Merrill Lynch, Pierce, Fenner & Smith v. Stark* (Aug. 29, 1991), Cuyahoga App. No. 58806, unreported, 1991 WL 185723.

Accordingly, appellant's third assignment of error is overruled in part and sustained in part.

## V

■ For his fourth assignment of error, appellant asserts that the trial court erred in not holding a hearing on his Civ.R. 60(B) motion for relief from

---

4. In citing federal cases, the *Brown* court recognized that Civ.R. 56 is patterned after Fed.R.Civ.P. 56 as indicated by the pertinent Staff Notes. Therefore, federal law may be used to interpret summary procedures in Ohio. *Grau v. Kleinschmidt* (1987), 31 Ohio St.3d 84, 90, 31 OBR 250, 255, 509 N.E.2d 399, 404; *Williams v. Church* (1974), 37 Ohio St.2d 150, 151, 66 O.O.2d 311, 309 N.E.2d 924, 925.

judgment. He argues that sufficient operative facts were presented to the trial court which supported a meritorious defense to the judgment, thereby warranting a hearing.

When an order "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties [it] shall not terminate the action * * *, and the order * * * is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Civ.R. 54(B). An entry of judgment involving fewer than all of the claims or parties is not final unless the court expressly concludes there is "no just reason for delay." *Id.*; see *Noble v. Colwell* (1989), 44 Ohio St.3d 92, 540 N.E.2d 1381; *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 541 N.E.2d 64.

In the present case, the trial court's journal entry dated August 14, 1991 was not a final appealable order. The judgment did not adjudicate the liabilities of the parties and it did not contain the Civ.R. 54(B) language "no just reason for delay."

Civ.R. 60(B) allows a court to relieve a party only from a final order or judgment. *Jarrett v. Dayton Osteopathic Hosp., Inc.* (1985), 20 Ohio St.3d 77, 78, 20 OBR 407, 486 N.E.2d 99, 100. The summary judgment did not become a final order until November 21, 1991, nearly three months after appellant filed his Civ.R. 60(B) motion in the trial court. Therefore, the trial court did not err in overruling this motion. *Harter v. Wadsworth–Rittman Hosp.* (1989), 64 Ohio App.3d 26, 580 N.E.2d 506; see, also, *Matrka v. Stephens* (1991), 77 Ohio App.3d 518, 602 N.E.2d 1191.

Appellant's fourth assignment of error is overruled.

## VI

Appellant, in his fifth assignment of error, proffers that the trial court's judgment is excessive and denies him due process of law as guaranteed by the Ohio and United States Constitutions. He argues that awarding Huntington both $19,521.10 and possession of the vehicle amounts to illegal "double dipping" and essentially punitive damages. Further, he repeats that he properly rescinded the contract and that the trial court is incapable of conditioning the judgment on a nonexistent instrument. This last claim was rejected in appellant's second assignment of error.

Initially, we direct appellant to App.R. 6 and Local App.R. 16. These rules delineate the requirements for appellate briefs, including an appellant's responsibility to present an argument with citations to supporting case law and other legal authority. Appellant fails to comply with this requirement.

■ A review of the present record discloses that appellant's assertion that the trial court's judgment amounts to "double dipping" is without factual support. The court's entry specifically states that Huntington is "awarded possession of the 1989 Ford Mustang automobile * * * that the Sheriff be directed to take possession of said automobile * * * and deliver the same to defendant * * *. *Same is to be sold and the proceeds applied to the proceeds applied [sic] to the money judgment awarded below.*" (Emphasis added.) This procedure complies with both the contract default provisions and 69 Penn.Stat. 623 through 627.

Appellant's fifth assignment of error is overruled.

The judgment is affirmed in part and reversed and remanded in part for the sole determination of reasonable attorney fees.

*Judgment accordingly.*

SPELLACY, P.J., and BLACKMON, J., concur.