This is an appeal from a summary judgment entered by the Hocking County Common Pleas Court in favor of Karen S. Sorrick, f/k/a Karen S. Freshour, defendant below and appellee herein, on her counterclaim against Lynda Gallucci, plaintiff below and appellant herein. The following errors are assigned for our review:
 FIRST ASSIGNMENT OF ERROR: "THE TRIAL COURT ERRED IN INVALIDATING THE QUIT-CLAIM DEED FROM PAUL L. FRESHOUR TO APPELLANT DATED JULY 22, 1994, RECEIVED FOR RECORD AUGUST 3, 1994 AT 11:52 A.M. AND RECORDED IN OFFICIAL RECORD VOLUME 42, PAGE 591, RECORDS OF HOCKING COUNTY, OHIO."
 SECOND ASSIGNMENT OF ERROR: "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION IN LIMINE."
This appeal is yet another installment in the litigation between Gallucci, Sorrick and one Paul Freshour over real estate located in Hocking County, Ohio. A brief summary of the previous litigation, as well as the facts pertinent to the cause sub judice, are as follows.[1]
Sorrick and Freshour were married in 1962. In 1980, they bought Lot 137 in the Hide-A-Way Hills development. Sorrick sued for divorce in 1982 at which time a restraining order prohibited Freshour from encumbering, or in any way disposing, of their joint assets. Ultimately, the parties obtained a divorce and the trial court ordered that the Hide- A-Way Hills property be sold. The sale proceeds were to be used to pay off certain debts, and the remainder of the proceeds were to be divided equally between Sorrick and Freshour. The sale, however, never took place.
Freshour was indicted by the Pickaway County Grand Jury on March 4, 1983, and charged with attempted murder in violation of R.C. 2923.02.[2]
That same year, in order to finance his defense to the criminal charge, Freshour executed a $15,000 promissory note to Gallucci and a Ms. Betty Hayes.[3] Freshour also executed and delivered to them a mortgage on his interest in the Hide-AWay Hills property to secure payment of that note. Four (4) years later, Hayes assigned her one-half (1/2) interest to Gallucci. It appears that no payment was ever made on that debt.
The antecedents to the current litigation began on February 25, 1987, when Gallucci filed suit seeking judgment on Freshour's note and foreclosure of his mortgage. Sorrick filed an answer asserting her interest in the property but raised no defenses relative to the note and mortgage being given in violation of her previous divorce. Freshour never responded to the complaint and, on November 4, 1987, a default judgment was taken against him and an order of sale was issued. The premises were appraised at $14,000 and Freshour's one-half (1/2) interest was offered for sale on February 19, 1988. Nobody was interested, however, and the property went unsold. The foreclosure action then laid dormant for almost eight (8) years.
During that time, several significant events took place which would have a direct impact on subsequent proceedings. The first of these was an action by the Hocking County Treasurer, to foreclose liens for unpaid real estate taxes on the Hide-A-Way Hills property. On April 20, 1990, the trial court ordered the sale of that property unless the sum of $3,237.13 (representing the back taxes) was paid within five (5) days. The judgment also noted that Gallucci failed to appear and to defend her purported mortgage interest in the premises and, therefore, the mortgage was "ordered canceled and released of record." Several days later, Sorrick came forward to pay the back taxes and the foreclosure action was dismissed.
The second significant event affecting this case occurred on July 22, 1994, when Freshour executed a quit-claim deed conveying his interest in the Hide-A-Way Hills property to Gallucci. This deed was filed of record on August 3, 1994, with the Hocking County Recorder and effectively made Gallucci and Sorrick co-owners of the premises.
Shortly thereafter, Gallucci brought her first action to partition the Hide-A-Way Hills property. Sorrick contested her claim and raised a number of legal and equitable issues including, inter alia, that her ex-husband's conveyances of the mortgage, and later the fee interest, had been fraudulent. Rather than pursue the partition action and address those defenses head on, Gallucci dismissed the case and turned her attention toward reviving the order of sale which had been issued in the 1987 foreclosure action.
On January 10, 1996, Gallucci filed a motion asking that an alias order of sale be issued. The trial court granted her request and issued the order the same day. A week later, however, Sorrick filed a motion with the trial court asking (1) that the foreclosure action be dismissed, (2) that the alias order of sale not be issued, (3) that she be granted relief from the 1987 judgment and (4) that she be granted summary judgment pursuant to Civ.R. 56. A large number of issues were raised in support of that motion. The most pertinent of these issues was that Gallucci's mortgage interest had been extinguished during the 1990 tax foreclosure and that, in any event, the mortgage interest merged with the fee interest conveyed to her by Freshour in 1994. Sorrick further argued that the mortgage had been given in defiance of the restraining order(s) issued in the 1983 divorce.
Gallucci filed a memorandum in opposition arguing, among other things, that the 1990 tax foreclosure had been dismissed and that the default judgment taken against her therein did not cancel the mortgage. She also asserted that it would be inequitable to hold that her mortgage interest had merged with the fee interest conveyed to her by Freshour. The basis for this assertion was that, if she could no longer pursue the foreclosure action, she would have to bring a different action with respect to the property and would thus be subject to the same affirmative defenses that Sorrick had raised against her in the aborted partition action. The trial court entered judgment on June 4, 1996, overruling Sorrick's motion and allowing the alias order of sale to proceed.
This Court reversed that judgment in Gallucci v. Freshour (Aug. 22, 1997), Hocking App. No. 96CA18, unreported, holding that the mortgage interest had, in fact, merged with the fee interest after it was conveyed to Gallucci thereby depriving her of any basis on which to pursue foreclosure. We also rejected her argument that application of the merger doctrine in that case was inequitable. Our reasoning was that (1) she accepted the quit-claim deed and had it recorded thus facilitating operation of merger herself and (2) the accusations of fraud leveled against her by Sorrick were "serious charges" that she should not be able to escape by an appeal to equity.[4] As a result, Gallucci was left no other option for enforcing her interest in the property other than to bring a second partition action.
Gallucci did just that and commenced the action below on November 6, 1997. Gallucci alleged that she and Sorrick were tenants in common of the Hide-A-Way Hills property and sought a partition of their respective interests. Sorrick filed an answer admitting her one-half (1/2) ownership in the premises, but denied that Gallucci owned any interest therein. A number of affirmative defenses were also asserted including that the quit-claim deed from Freshour had been given by him, and accepted by Gallucci, with both of them having full knowledge of the restraining order in the divorce case.
Sorrick later filed a motion to join her ex-husband (Freshour), and his current wife, as third party defendants. That motion was granted and, on March 2, 1998, Sorrick filed an extensive counterclaim and third party complaint seeking (1) declaratory judgment that the 1994 quit-claim deed from Freshour to Gallucci was void as in contravention of the restraining order(s), (2) contribution from Freshour and/or Gallucci, depending upon who owned the other one-half (1/2) interest in the premises, for taxes, maintenance, insurance and assessments on the real estate and (3) damages from Gallucci for malicious civil prosecution. Gallucci filed a reply denying the material allegations against her and raising, among other things, the affirmative defense ofres judicata. The Freshours also filed a reply denying any liability to Sorrick on her third-party complaint as well as a "counterclaim/cross-claim" charging her with frivolous conduct and (should the quit-claim deed to Gallucci be found void) wrongful exclusion in keeping them from the premises. They asked for damages for attorney fees together with a monthly rental of $750 for the Hide-A-Way Hills property. Sorrick replied denying any liability to her ex-husband.
All parties eventually filed motions for summary judgment. Freshour and his wife filed their motion on September 30, 1998 seeking summary judgment on Sorrick's third party claims. The gist of their argument was that there was, in reality, no order restraining the encumbrance or conveyance of Freshour's one-half (1/2) interest and, thus, neither the mortgage nor the quit-claim deed were invalid.[5]
Sorrick filed her motion on October 1, 1998 arguing that an agreed post-divorce judgment entry prohibited Freshour from vesting or attempting to vest "any right to others" in the Hide-A-Way Hills property. A copy of that entry was attached as an exhibit to her motion.[6] A joint affidavit from Freshour's two (2) daughters was also attached as an exhibit and detailed how the girls recalled that their father and Gallucci discussed the restraining order(s) and then devised a scheme by which to "screw" or "scam" their mother out of the subject property. As a result, Sorrick concluded, Gallucci clearly had knowledge of the court's orders (or at least, the divorce proceedings in general) thereby triggering operation of lis pendens and rendering the subsequent quit-claim deed invalid.[7]
Gallucci filed her own summary judgment motion on October 5, 1998, but did not address Sorrick's contention that she knowingly obtained title to her half interest in the property in violation of court order(s). Instead, she argued that this point should have been raised as a compulsory counterclaim at some prior stage in this protracted litigation. Gallucci concluded that, because this claim had not previously been raised, the matter was now res judicata and could not properly be considered by the trial court.
Various memoranda contra were filed below with respect to these motions and, on February 8, 1999, the trial court granted summary judgment to Gallucci and Freshour and ordered that "the matter proceed as a partition action only." No mention was made of Sorrick's summary judgment motion.
A hearing was scheduled for August 24, 1999, before which time Gallucci filed a motion in limine seeking to prevent Sorrick from introducing any evidence with respect to the issue of lis pendens or whether property interests were acquired in violation of previous restraining order(s). As in her motion for summary judgment, Gallucci argued that consideration of these matters was barred by the doctrine ofres judicata.
Once the hearing actually commenced, ho evidence was heard on the partition claim. Instead, counsel and the trial court understandably engaged in lengthy and involved legal arguments which ultimately led to the court's judgment which reversed its position in the February 8, 1999 judgment, and sustained Sorrick's motion for summary judgment. The court found that the uncontroverted evidence showed that Gallucci had knowledge of the restraining order(s) on the property which rendered the 1994 quit-claim deed invalid. Summary judgment was thus granted in favor of Sorrick on her counterclaim and the motion in limine was overruled. Judgment to that effect was entered on October 6, 1999 and this appeal followed.
 I
Before addressing Gallucci's assignments of error, we first pause to consider a threshold jurisdictional issue. Appellate courts in Ohio have jurisdiction to review the final orders or judgments of inferior courts within their district. See Section 3 (B) (2), Article IV of the Ohio Constitution; also see R.C. 2501.02. A final order is one which interalia affects a substantial right and in effect determines the action. R.C. 2505.02 (B) (1)
Further, whenever there is a multiplicity of parties or claims, the provisions of Civ.R. 54 (B) must also be factored into the consideration of whether a judgment is final and appealable. In re Berman (1990),69 Ohio App.3d 324, 328, 590 N.E.2d 809, 811. This rule provides that a court may enter final judgment as to one or more but fewer than all claims only upon "an express determination that there is no just reason for delay." Civ.R. 54 (B). Where applicable, judgments must satisfy both Civ.R. 54 (B) and R.C. 2505.02 in order to be considered final and appealable. See Hitchings v. Weese (1997), 77 Ohio St.3d 390, 391,674 N.E.2d 688; State ex rel. Wright v. Ohio Adult Parole Auth. (1996),75 Ohio St.3d 82, 85, 661 N.E.2d 728, 731; Chef Italiano Corp. v. KentState University (1989), 44 Ohio St.3d 86, 541 N.E.2d 64 at the syllabus.
There are several claims in this case which remain pending, including Freshour's claim of wrongful exclusion from the real estate and Sorrick's claim of contribution for taxes, insurance, maintenance, etc. Further, in entering judgment in favor of Sorrick on her counterclaim, the trial court granted Gallucci leave to amend her partition complaint to "raise the legal effect" of the court's judgment on the mortgage given to her by Freshour. Gallucci filed her amended complaint on November 5, 1999, and it would appear that this case has risen yet again, in a new incarnation, and is currently winding its way through the court below as a second mortgage foreclosure.[8]
Unfortunately, there are multiple claims which have not been resolved in the cause sub judice. Nevertheless, the October 6, 1999 judgment contains the requisite Civ.R. 54 (B) language that there is "no just reason for delay." This Court, therefore, has jurisdiction to consider the appeal on its merits and we turn our attention to the errors assigned herein.[9]
 II
Gallucci argues in her first assignment of error that "it was procedurally and substantively incorrect for the trial court to invalidate the deed" given to her by Freshour. The procedural prong of this argument centers around the trial court's decision to vacate its February 8, 1999 entry and award Sorrick summary judgment on her counterclaim. Gallucci takes the position that this amounted to an improper, sua sponte, grant of relief from judgment under Civ.R. 60 (B). We disagree.
By its very terms, the provisions of Civ.R. 60 (B) apply only to "final judgments." Vanest v. Pillsbury Co. (1997), 124 Ohio App.3d 525,532, 706 N.E.2d 825, 830; also see Keenan v. Huntington Acceptance Co.
(1993), 91 Ohio App.3d 795, 811, 633 N.E.2d 1164, 1174. The February 8, 1999 judgment does not constitute a final judgment in view of the fact that, as discussed previously (1) a number of claims remain pending in this case, and (2) because the trial court made no finding of "no just reason for delay" pursuant to Civ.R. 54 (B). The trial court's entry was, instead1 an interlocutory judgment to which provisions of Civ.R. 60 (B) were inapplicable. Moreover, because of its interlocutory nature, the judgment was subject to amendment or modification at any time prior to entry of final judgment. See Brooks v. Brooks (1996), 117 Ohio App.3d 19,21, 689 N.E.2d 987, 989; Cassim v. Cassim (1994), 98 Ohio App.3d 576,578, 649 N.E.2d 28, 29-30; also see Fifth Third Bank v. CookerRestaurant Corp. (Mar. 31, 2000), Hamilton App. No. C-990278, unreported; Ramirez v. Ramirez (Dec. 30, 1996), Lucas App. No. L-96-084, unreported. The trial court was therefore well within its authority to vacate the February 8, 1999 judgment, and we find no procedural error in that decision.
Gallucci also challenges the trial court's decision to "invalidate the [Freshour] deed" from a substantive standpoint. She argues that the issues raised by Sorrick in the proceeding below should have been raised in an earlier proceeding and were thus res judicata and barred from further consideration by the trial court. We are not persuaded. The doctrine of res judicata operates to preclude relitigation of a point of law or fact that was at issue in a former action between the same parties and was passed on by a court of competent jurisdiction. Seegenerally Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, 381,653 N.E.2d 226, 228; Consumers' Counsel v. Pub. Util. Comm. (1985),16 Ohio St.3d 9, 10, 475 N.E.2d 782, 783; Norwood v. McDonald (1943),142 Ohio St. 299, 52 N.E.2d 67, at paragraph one of the syllabus. However, in order for the doctrine to apply, the issue under consideration must have been passed upon in the earlier proceeding.State ex rel. Kroger Co. v. Indus. Comm. (1998), 80 Ohio St.3d 649, 651,687 N.E.2d 768, 770. Res judicata does not apply if the issue at stake was not involved in the previous action. Id.; also see Ameigh v.Baycliffs Corp. (1998), 81 Ohio St.3d 247, 250, 690 N.E.2d 872, 875. This is where Gallucci's argument fails.
The subject of this litigation is the quit-claim deed from Freshour. The issue is the validity of that instrument. Obviously, this was never an issue in either the 1987 mortgage foreclosure or the 1990 tax foreclosure. The issue did apparently come up in Gallucci's first attempt at partitioning the property but, as mentioned earlier, that case was ultimately dismissed. It does not appear to us that the issue has ever been considered, or could have reasonably been considered, in any previous proceeding. The doctrine of res judicata therefore does not apply in this instance.[10]
Gallucci counter argues that had the property been sold at Sheriff's sale, the deed to the premises would have passed title free and clear of any defects and the quit-claim deed from Freshour should be deemed to have done the same. This is a non-sequitur. First, we are not considering a Sheriff's deed in the instant case. Rather, we are considering a quit-claim deed from one private party to another.
Second, a mortgage foreclosure usually involves the marshaling of liens which accounts for the property being sold free and clear of any encumbrance or defect. That process does not occur in a private and voluntary transaction between two (2) individuals. The operative effect of a transfer as a result of a sheriff's sale simply cannot be compared to that of a quit-claim deed. We thus find no merit in Gallucci's contention that the trial court "substantive[ly]" erred in its decision to "invalidate" Freshour's quit-claim deed. For these reasons, the first assignment of error is without merit and is accordingly overruled.
 III
Gallucci argues in her second assignment of error that the trial court erred in overruling her motion in limine. We reject this argument for several reasons. To begin, appellate courts do not directly review rulings on motions in limine. State v. White (Oct. 21, 1996), Gallia App. No. 95CA08, unreported. Those rulings are tentative and interlocutory, and made by a court in anticipation of its actual ruling on evidentiary issues at trial. McCabe/Marra Co. v. Dover (1995), 100 Ohio App.3d 139,160, 652 N.E.2d 236, 250; Collins v. Storer Communications, Inc. (1989),65 Ohio App.3d 443, 446, 584 N.E.2d 766, 767-768. The denial of a motionin limine does not preserve any error for review. State v. Hill (1996),75 Ohio St.3d 195, 202-203, 661 N.E.2d 1068, 1077. In order to preserve the error for appeal the evidence must be presented at trial accompanied a proper objection. See State v. Brown (1988), 38 Ohio St.3d 305,528 N.E.2d 523, at paragraph three of the syllabus; State v. Grubb
(1986), 28 Ohio St.3d 199, 503 N.E.2d 142, at paragraph two of the syllabus. An appellate court then reviews the correctness of the trial court's ruling on the objection rather than the ruling on the motion inlimine. White, supra; Wray v. Herrell (Feb. 24, 1994), Lawrence App. No. 93CA08, unreported. When there is no trial, as in the cause sub judice,
there can be no review on the motion in limine. See State v. James (May 11, 1994), Medina App. No. 2261-M, unreported; State v. Schubert (Dec. 22, 1986), Seneca App. No. 13-85-22, unreported.
The cause sub judice was decided on summary judgment. No trial occurred and, thus, the trial court did not definitively rule upon the issue raised in the motion in limine. Thus, this issue has not been properly preserved for appeal.
Assuming, arguendo, that we could review the correctness of the trial court's decision overruling the motion, we would nevertheless find no error because that motion was based on the argument that Sorrick's claims were barred by res judicata. That argument, as discussed earlier, had no merit. The second assignment of error is thus overruled for these reasons.
Having reviewed all errors assigned and argued in the briefs, and fining merit in none of them, the judgment of the trial court is hereby affirmed.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 _________________________ Peter B. Abele, Judge
Evans, J. Grey, J.*: Concur in Judgment Opinion
* Lawrence Grey, retired, sitting by assignment of the Ohio Supreme Court in the Fourth District.
[1] Some of the background information set forth herein is taken from our previous decision in Gallucci v. Freshour (Aug. 22, 1997). Hocking App. No. 96CA18, unreported.
[2] He was later convicted and sentenced to an indeterminate seven (7) to twenty-five (25) year prison term which was affirmed by this Court inState v. Freshour (Mar. 19, 1986), Pickaway App. No. 83CA32, unreported.
[3] Although not entirely clear, materials in the record suggest that Hayes is Freshour's sister and that Gallucci was a "law student" assisting him with his "criminal defense."
[4] This Court nevertheless rejected Sorrick's argument that Gallucci's mortgagee interest had been extinguished by the default judgment against her in the 1990 tax foreclosure proceeding. We reasoned that because the case was voluntarily dismissed after Sorrick came forward to pay the back taxes, it was as if the case, and thus the judgment, had never existed. See Gallucci, supra, citing Zimmie v.Zimmie (1984), 11 Ohio St.3d 94, 95, 464 N.E.2d 142, 144; also see
1 Ohio Jurisprudence 3d (1977) 633, Actions, § 199.
[5] There were apparently two (2) separate divorce actions commenced between Sorrick and Freshour in the early 1980s. A restraining order was issued in case no. 82DR-10-3228, commenced by Sorrick, which prohibited disposal or encumbrance of the assets of the parties but this case was supposedly dismissed in May of 1983. The second action, case no. 82DR-10- 3214, commenced by Freshour, had a restraining order issued which prohibited only the encumbrance of the real estate. In any event, Freshour argued, the order merged into the final decree and could no longer be enforced against him after the divorce was granted. He therefore concluded that there was no order actually prohibiting him from mortgaging his half interest or conveying it to Gallucci.
[6] It is not entirely clear from the copy when that entry was filed. One stamp states that it was March 22, 1985, and another states that it was March 26, 1984. In any event, either date is well before the 1994 quit-claim deed.
[7] Sorrick also argued (and submitted an affidavit in support of that argument) that she expended in excess of $15,000 for taxes, insurance, maintenance, etc. on the property and was entitled to contribution from whomever was determined to be the other co-owner.
[8] At first glance, this seems somewhat incongruous given our ruling in Gallucci, supra, that the mortgage interest merged into the fee interest conveyed by the quit-claim deed. This can be readily explained, however, by the fact that this Court never directly considered the validity of the deed itself. The issue was nevertheless squarely before the trial court in this case which determined that the deed was invalid and thus resurrected the issue of the 1983 mortgage.
[9] Another potential jurisdictional problem was the Civ.R. 59 Motion for New Trial filed by Freshour several weeks after entry of the October 6, 1999 judgment. It does not appear from the record that this motion has been decided. A Civ.R. 59 motion for new trial tolls the time period for filing a notice of appeal. App.R. 4 (B) (2). Thus, until such motion is ruled on, the appeal time never begins to run and any notice of appeal fails to invoke the jurisdiction of this Court. See Columbus v.Triplett (Dec. 14, 1999), Franklin App. No. 99AP-368, unreported; Whitev. Bozman's (Dec. 18, 1995), Hocking App. No. 95CA9, unreported. We disregard that problem here, however, because Freshour's motion was untimely under Civ.R. 59 (B) and, in any event, such motions do not apply in the context of summary judgment proceedings. See Knecht v. OhioDept. of Rehab. Corr. (1992), 78 Ohio App.3d 360, 363, 604 N.E.2d 820,822; Dahl v. Kelling (1986), 34 Ohio App.3d 258, 260, 518 N.E.2d 582,584.
[10] The trial court never expressly stated why it rejected Gallucci s argument that Sorrick's defense and counterclaim were barred by resjudicata. Presumably, it was because of the lack of identity in issues between the previous foreclosure and the current partition action. We parenthetically note, however, that there is also authority for the proposition that certain "special circumstances will take a case out of the operation of res judicata. 46 American Jurisprudence 2d (1994) 836, Judgments, § 562. The doctrine is only to be applied in situations as fairness and justice require and is not to be applied so rigidly as to defeat the ends of justice or as to work an injustice. Id. at 786-787, § 522. Because the trial court never stated that it was disregarding the res judicata argument on grounds that it would be inequitable to apply it here, we need not and do not reach the issue of whether the particular facts and circumstances of the cause sub judice justify going outside the doctrine.