It is a fundamental proposition of law that a court of record speaks through its records alone. See 35 Ohio Jurisprudence, 17, Records, Section 14, where the author, supported by Ohio cases too numerous to cite, states in part as follows:

"A court speaks through its records alone; it is, therefore, a long-established general rule that in judicial proceedings of a court of record of competent jurisdiction the record is conclusive and imports absolute verity. This is true of a probate court acting as a juvenile court, as well as of a municipal court."

Sections 12111 and 12112, General Code, above quoted, do not require the judge of the Juvenile Court to include as part of the transcript all the proceedings which took place at the preliminary hearing, and this court is without jurisdiction to compel the trial judge to do anything other than is provided by law.

Therefore, without in any wise determining the merits of this appeal, we conclude that the motion to compel the trial judge to add to or complete the transcript of all the proceedings on the preliminary hearing of May 26, 1950, must be and is overruled.

*Motion overruled.*

SKEEL, P. J., and McNAMEE, J., concur.

PENNINGTON, APPELLEE, *v.* FIRST DISCOUNT CORPORATION, APPELLANT.

(No. 7459—Decided June 25, 1951.)

Mr. *Harry M. Wasserman* and Mr. *Earl J. Gold-smith, Jr.,* for appellee.
Mr. *Jacob S. Hermann,* for appellant.

*Per Curiam.* This is an appeal from a judgment in favor of the plaintiff, the mortgagor of an automobile, against the defendant, the assignee of the mortgagee, for damages resulting to the mortgagor from the seizure and sale of the automobile by such assignee.

The plaintiff alleged that he bought the automobile from Ohio Motor Sales of Dayton, Ohio, on August 13, 1948, for the sum of $2,400; that he paid $305 in cash and was given credit of $395 for a secondhand automobile, which he transferred to the vendor at the time, leaving a balance of $1,700 still due, to secure which he gave a chattel mortgage to the vendor for $2,197.20, which included $497.20 for insurance premium and finance charges; and that this unpaid balance was evidenced by a note secured by the mortgage and was payable in monthly instalments of $91.55, the first instalment being payable on September 20, 1948. The plaintiff alleged also that he made payments, without specifying the number, when he requested the defendant, to whom the mortgage had been assigned, to ex-

tend the time of payment, which the defendant agreed to do, in consideration for which the plaintiff agreed to pay interest. He alleged also that on January 22, 1949, the defendant took possession of the automobile, concealed it from him, refused to allow prospective purchasers to inspect it, finally sold it, and on April 23, 1949, notified him of the sale; that he still owed $860.13; that he was never notified of the date, time, or place of sale; and that the reasonable value of the automobile was far in excess of the price for which the defendant sold it.

The plaintiff alleged further that the seizure and sale were wrongful, and that he had been damaged in the sum of $2,400, the alleged value of the automobile. There was no allegation or proof of any circumstances that would justify the awarding of punitive damages.

The defendant's answer contained parallel allegations relating to the purchase of the automobile by the plaintiff and the execution of the note and mortgage for the unpaid balance. It alleged that the note was endorsed to defendant without recourse in the regular course of business, and that the mortgage was assigned to defendant. The defendant then pleaded the provisions of the mortgage, authorizing it upon default to take possession of the automobile, sell it at public or private sale without notice and apply the proceeds of sale upon the mortgage debt, all of which became due at once upon default of any payment. The defendant alleged that plaintiff made one payment of $91.50 and another payment of $50, and thereupon became in default.

The answer contained a general denial of all the allegations of the amended petition not specifically admitted to be true. It ended with a prayer that the amended petition be dismissed, and that defendant be awarded its costs.

The evidence supported the allegations of the pleadings as to the execution and transfer of the note and mortgage, that only $141 had been paid on the debt, that the plaintiff was in default at the time defendant took possession, and that defendant was within its rights under the mortgage in taking possession of and in selling the automobile. Whether there is any evidence of dereliction of duty in the manner of sale, we find it unnecessary to determine. Defendant realized $1,200 from the sale.

The jury returned a verdict for the plaintiff in the sum of $750. Without objection, this question was submitted to it: ''What was the fair and reasonable value of the 1947 Chevrolet mentioned in the amended petition, on January 22, 1949?'' Its answer was, $1,950.

Under common-law forms, this action would be classed as an action in trover for the conversion of an automobile. While we have substituted for common-law forms of action, the one civil action, the substance of the cause of action remains the same. It is an action for damages on account of being deprived of personal property. One of the essential elements of the plaintiff's case is proof of title. The burden of proving title rests upon the plaintiff. No burden rests upon the defendant to prove that he has a better title.

In this case, since the facts are admitted, we are not concerned with the question of what evidence of title would be sufficient to sustain a verdict.

The plaintiff and defendant each owned a limited title to the automobile, the plaintiff as mortgagor, and the defendant as assignee of the mortgage. We do not think it important who has the legal title. The fact is that the defendant had a proprietary interest to the extent of $2,080.13, including repossession and sales expense, and the plaintiff's title was subject to that incumbrance.

If it had been the duty of the defendant to so conduct the sale as to realize the full reasonable value of the automobile (which we do not find) and had defendant realized that amount, found by the jury to be $1,950, and had paid that amount to the plaintiff, it would have been plaintiff's duty to immediately repay it to the defendant. The law does not require the doing of a vain thing.

Of course there are cases where a plaintiff having a special or qualified title is permitted to recover the full value of the property, but that is where the general title is owned by a third person and not where it is owned by the defendant. In such case, the plaintiff becomes a trustee for the owner of the general title. That has no application where the defendant is the owner and the plaintiff would be obliged to account to him. Bowers Treatise on the Law of Conversion, 464, 512, Sections 634, 682. In 10 American Jurisprudence, 832, Section 175, it is stated that "generally in an action for conversion the mortgagee is entitled to recoup the amount of the mortgage debt."

The highest valuation placed upon the automobile by any witness was $2,000.

In view of this situation, it is manifest that no verdict in plaintiff's favor could stand. The court should have sustained the defendant's motion for an instructed verdict and its motion for judgment notwithstanding the verdict. Therefore, it becomes unnecessary for us to pass upon the alleged errors in the charge of the court.

For these reasons, the judgment is reversed and final judgment entered for the defendant.

*Judgment reversed.*

HILDEBRANT, P. J., MATTHEWS and ROSS, JJ., concur.