**Nathan SCHIFF, Plaintiff,**

v.

**MAZDA MOTOR OF AMERICA, INC., et al., Defendants.**

**No. C–3–98–265.**

United States District Court, S.D. Ohio, Western Division.

March 10, 2000.

---

Ronald Lee Burge, Burdge Law Office, Dayton, OH, for Nathan Schiff.

Barbara Jo Arison, thompson Hine & Flory, cleveland, OH, for Mazda Motor of America, Inc., Mazda American Credit.

## DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 22); DECISION AND ENTRY OVERRULING, AS MOOT IN PART, AND OVERRULING IN PART DEFENDANTS' MOTION TO STRIKE (DOC. # 28); FURTHER PROCEDURES ESTABLISHED

RICE, Chief Judge.

In May, 1994, the Plaintiff leased a Mazda Miata from Arnold Automotive, Ltd. ("Arnold"), an automobile dealer located in the state of Michigan.[1] After the vehicle lease agreement ("Lease") had been executed by the Plaintiff and Arnold, it was assigned to Defendant Mazda American Credit ("Credit").[2] As a consequence, Plaintiff made his payments under the Lease to Credit. When he entered into the Lease, the Plaintiff was a resident of Michigan. However, in September, 1996, approximately nine months before the expiration of the Lease, he moved to Ohio.

The Lease was for a term of 36 months, and was scheduled to expire at the end of May, 1997. However, a provision in that document permitted the Plaintiff to purchase the Mazda Miata for the sum of $13,340.70. In the spring of 1997, as the end of the Lease approached, Arnold informed the Plaintiff that to purchase the automobile, he would have to pay Arnold $100.00, as a documentation fee, above the amount set forth in the Lease. He was also informed that he could close the purchase at another Mazda dealer, since he was now living more than 100 miles from Arnold. The Plaintiff contacted a number of other Mazda dealers in Ohio, and discovered that they would charge between $200.00 and $350.00 to close the purchase.[3] Although he was not pleased with having to pay an additional $100.00 to exercise his contractual right to purchase the Mazda Miata, the Plaintiff decided to go forward with the transaction. To accomplish that goal, he arranged financing from National City Bank. Arnold sent the closing papers to that financial institution; however, the Plaintiff declined to close the transaction, because the additional $100.00, which he was being required to pay, was included as part of the purchase price of the vehicle, rather than being listed on a separate line as a documentation fee.

Even though the Plaintiff had not purchased the vehicle, he did not surrender possession of it. Rather, for approximately two weeks after the Lease had expired, the Plaintiff continued to retain possession of the Mazda Miata, without making any additional payment to Credit. Consequently, on June 12, 1997, Credit repossessed that vehicle and, subsequently, sold it at auction for $12,000.00.

The Plaintiff brought this litigation in the Court of Common Pleas for Montgomery County, Ohio, against Credit and Mazda Motor of America, Inc. The Defendants timely removed this action to this Court on

---

1. Since this case is before the Court on the Defendants' Motion for Summary Judgment (Doc. # 22), the Court sets forth the circumstances giving rise to this litigation in the manner most favorable to the Plaintiff, the party against whom summary judgment is sought.

2. According to the Defendants, Credit's correct corporate name is Primus Automotive Financial Services, Inc. However, since the name American Mazda Credit appears on the Lease and, further, given that the parties have used that name, this Court will do the same.

3. When he visited one such dealership, an employee therein attempted to sell him another Mazda Miata.

the basis of diversity of citizenship. *See* 28 U.S.C. § 1332. In his Complaint, the Plaintiff has set forth five claims, the first and fifth of which are asserted against both Defendants, while the other three are against Credit alone. In his First Claim for Relief, the Plaintiff alleges that both Defendants violated the Ohio Consumer Sales Practices Act ("OCSPA"), Chapter 1345 of the Ohio Revised Code, by refusing to permit him to purchase the vehicle for the price set forth in the Lease. In his Second Claim for Relief, the Plaintiff sets forth a common law claim of breach of contract, alleging that Credit breached the Lease by not permitting him to purchase the vehicle for the amount set forth in that document. In his Third Claim for Relief, Plaintiff sets forth a common law claim of fraud, alleging that Credit misrepresented that he would not be required to pay more to purchase the automobile than the amount set forth in the Lease. With his Fourth Claim for Relief, Plaintiff sets forth a common law claim of conversion against Credit, alleging that it converted

the Mazda Miata when it repossessed that vehicle. In his Fifth Claim for Relief, the Plaintiff has set forth another claim under the OCSPA against both Defendants, alleging that they acted in concert and violated that statute, by requiring consumers to purchase their leased vehicles from a Mazda dealer, thus affording such dealers the opportunity to sell consumers additional or different automobiles. With each of his five claims, the Plaintiff asserts that he has suffered actual damages in the amount of $20,523.45, which is alleged to represent the loss of the value of the automobile. In addition, the Plaintiff seeks to recover punitive damages in the sum of $2,000,000.00, as well as treble damages, statutory damages, attorney's fees and costs.

This case is now before the Court on the Defendants' Motion for Summary Judgment (Doc. # 22).[4] As a means of analysis, the Court will initially set forth the standards which are applicable to all motions for summary judgment, following

4. Defendants' Motion to Strike (Doc. # 28) is also pending. With that motion, the Defendants primarily request that this Court strike the report of David Stivers ("Stivers"), an expert witness identified by the Plaintiff, from Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. # 25). The Defendants have argued that Stivers' report must be stricken, because it has not been authenticated and, further, since that report merely sets forth his conclusions, without demonstrating that he based those conclusions upon the evidence in this case. Subsequently, the Plaintiff filed a motion requesting that the Court stay its Decision on the Defendants' two motions, because they had recently provided documents which Stivers had to review in order to incorporate into his opinions. *See* Doc. # 34. Thereafter, the Plaintiff filed his Supplemental Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. # 42), to which a new, authenticated report by Stivers has been attached. The Defendants have not moved to strike that new, authenticated report. Since Stivers' new report replaces his previous one that was the subject of the Defendants' Motion to Strike, the Court overrules that motion, as moot, as it relates to Stivers' report.

In their Motion to Strike (Doc. # 28), the Defendants also request that this Court strike two unreported decisions which the Plaintiff has attached to his memorandum. According to the Defendants, these decisions must be stricken, because they have not been authenticated. This Court cannot agree. Under S.D. Ohio Civ. R. 7.2(b)(4), copies of unreported decisions must be attached to a memorandum; however, that Rule does not require such opinions to be authenticated. Moreover, the Plaintiff has attached the unreported decisions as authority for the arguments in his memorandum, rather than as evidence. The Defendants have not cited any authority in support of the proposition that a party need prove the law, like he would a fact. Indeed, the only such provision is Fed.R.Civ.P. 44.1, which permits a court to hear testimony when determining the law of a foreign country. In addition, the Defendants argue that the Court should strike the two unreported opinions, because they are not relevant. The Court will decline to do so on that basis. The remedy for a citation of authority that does not support an argument or a claim is to point out the alleged shortcoming in a responsive memorandum. Accordingly, the Court overrules the Defendants' Motion to Strike (Doc. # 28), to the extent that, with that motion, the Defendants request that this Court strike two unreported decisions that the Plaintiff has attached to his memorandum.

which it will turn to the arguments of the parties in support of and in opposition to the instant such motion.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility

determinations must be left to the fact-finder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the non-moving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment....."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

As is indicated, the Plaintiff has set forth five claims for relief in his Complaint, to wit: two claims under the OCSPA (the First and Fifth Claims for Relief), a common law claim of breach of contract (Second Claim for Relief), a common law claim of fraud (Third Claim for Relief) and a common law claim of conversion (Fourth Claim for Relief). The First and Fifth Claims are asserted against both Defendants, while the Plaintiff's Second through Fourth Claims are maintained against Credit alone. As a means of analysis, this Court will discuss the Plaintiff's claims in the order in which they appear in his Complaint, addressing his two claims under the OCSPA together.

1. *Claims under the OCSPA (First and Fifth Claims for Relief)*

The Defendants initially argue that they are entitled to summary judgment on the Plaintiff's claims under the OCSPA, because the Lease contained a choice-of-law provision, under which the parties to that contract agreed that Michigan law would govern their relationship. As a consequence, the Defendants contend that the OCSPA does not apply. It is axiomatic that a federal court whose jurisdiction is based on diversity of citizenship must apply the choice-of-law principles of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 490, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Johnson v. Ventra Group, Inc.*, 191 F.3d 732, 738 (6th Cir.1999). Accordingly, this Court turns to Ohio's choice-of-law principles.

In *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 453 N.E.2d 683 (1983), the Ohio Supreme Court addressed a choice-of-law issue in a breach of contract dispute in which the parties' contract had provided that the law of a particular state would govern any dispute arising under the contract. The *Schulke* court adopted § 187 of the Restatement (Second) of the Law of Conflicts and held, in the syllabus:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied unless either the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or application of the law of the chosen state would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice by the parties.

*Id.*, at 684. In *Jarvis v. Ashland Oil, Inc.*, 17 Ohio St.3d 189, 478 N.E.2d 786 (1985), the Ohio Supreme Court elaborated upon the rule it had established in *Schulke*:

1. Where the parties to a contract have made an effective choice of the forum law to be applied, the Restatement of the Law 2d, Conflict of Laws (1971) 561, Section 187(2), will not be applied to contravene the choice of the parties as to the applicable law. (*Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.* [1983], 6 Ohio St.3d 436, 453 N.E.2d 683 followed.)

2. Where the law of the chosen state sought to be applied is concededly repugnant to and in violation of the public policy of this state, the law of Ohio will only be applied when it can be shown that this state has a materially greater interest than the chosen state in the determination of the particular issue. (Restatement of the Law 2d, Conflict of Laws [1971] 561, Section 187[2][b], construed.)

*Id.* at 189, 478 N.E.2d at 787.

■ In support of their contention that the Lease has a choice-of-law provision, the Defendants point to ¶ 31 of that document, which provides in pertinent part:

Except as otherwise provided by the law of the state where the Lessee resides, the law that will apply to this Lease is the law of the state where the Lessor's place of business is, as set forth on the Lease.

The front of the Lease indicates that Arnold's place of business is located within the state of Michigan. In addition, since the Plaintiff was a resident of Michigan when he entered into the Lease, the "except" clause at the beginning of ¶ 31 cannot render that provision ineffective. Therefore, this Court concludes that the parties have chosen the law of Michigan to govern their relationship, and turns to the issue of whether either of the exceptions identified by the Ohio Supreme in *Schulke* is applicable.

Therein, the Ohio Supreme Court indicated that a contractual choice-of-law provision would not be given effect under two circumstances. Under the first, the law of the chosen state will not be applied, if that state lacks a substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice. Herein, the Plaintiff, a resident of Michigan, entered into a Lease with a business located within that state. The Lease was negotiated and executed within Michigan. Consequently, the state selected by the parties has a substantial relationship with them and their transaction, and the first circumstance recognized in *Schulke* does not serve as the basis for disregarding the parties' contractual choice-of-law. The second circumstance recognized by the *Schulke* court is where application of the law of the chosen state would be contrary to the fundamental policy of a state having a greater material interest than the state chosen by the parties. Under *Jarvis*, this circumstance will permit the application of Ohio law, only if it is shown that this state has a materially greater interest than Michigan in the transaction. Plaintiff argues that Ohio has such an interest, because he moved to Ohio in September, 1996. This Court does not agree. This case arises out of a contract which was negotiated and executed within the state of Michigan and was between a resident of that state and a business located therein. The fact that the Plaintiff moved to Ohio more than two years after he entered into the Lease does not cause this Court to conclude that Ohio has a materially greater interest in the Lease than Michigan. Therefore, assuming for sake of argument that the failure to apply the OCSPA to a contract negotiated and executed in Michigan, between parties who then resided in that state, would violate the fundamental policy of Ohio, the law of Michigan is nevertheless applicable to the Lease.

Flowing from that conclusion is the determination that the OCSPA does not apply. In *Keenan v. Huntington Acceptance Co.*, 91 Ohio App.3d 795, 633 N.E.2d 1164 (1993), the Cuyahoga County Court of Appeals addressed a similar situation and concluded that the OCSPA did not apply.

Therein, the plaintiff purchased a vehicle from a automobile dealer located in Pennsylvania. To finance the purchase, the plaintiff entered into a Pennsylvania Motor Vehicle Installment Contract, which was assigned to the defendant. The plaintiff brought suit against the defendant, setting forth, *inter alia*, a claim under the OCSPA. In affirming the entry of judgment in favor of the defendant, the appellate court concluded that the OCSPA was inapplicable, since that contract was governed by Pennsylvania law, rather than the law of Ohio. *Id.* at 806, 633 N.E.2d at 1171.

In sum, since the Lease is governed by the law of Michigan, the OCSPA, a creature of Ohio law, is inapplicable. Consequently, this Court sustains the Defendants' Motion for Summary Judgment (Doc. # 22), as it relates to Plaintiff's claims under the OCSPA, the First and Fifth Claims in his Complaint.[5]

### 2. Breach of Contract Claim (Second Claim for Relief)

■ With this claim,[6] the Plaintiff alleges that Credit breached the Lease, by not permitting him to purchase the Mazda Miata for the amount stipulated in that document. Credit argues that it is entitled to summary judgment on this claim, because it did not breach any obligations under that agreement. In particular, Credit contends that the additional $100.00, which

the Plaintiff was being charged to purchase the Mazda Miata, merely represented the out-of-pocket expenses that Arnold would incur in order to close the transaction. According to Credit, Arnold would incur that additional expense for items such as long distance telephone calls and Federal Express charges, which were necessitated by Plaintiff's move to Ohio. Credit argues that the Lease did not state that Arnold would waive the right to recover the additional expenses it would incur to sell the vehicle at the end of that agreement, if the Plaintiff moved out of state. Credit also contends that the Plaintiff could have avoided the whole problem, by returning to Arnold's place of business in Michigan to complete the purchase. This Court cannot agree with Credit. The Lease expressly provides that the Plaintiff had the right to purchase the vehicle for the stated sum of $13,340.70. That agreement does not indicate that said sum may also include the dealer's out-of-pocket expenses. In addition, the Plaintiff testified during his deposition that he had been informed by an employee of Arnold that he would be charged the additional $100.00, regardless of whether he returned to Michigan to complete the purchase.[7] Plaintiff's Dep. at 31–32. Accordingly, the Court concludes that Credit has failed to demonstrate the absence of a genuine is-

---

5. In addition to arguing that they are entitled to summary judgment, because the OCSPA is inapplicable, the Defendants argue that they are entitled to summary judgment on the merits of the Plaintiff's claims under that statute. Given that this Court has concluded that the OCSPA does not apply, it is not necessary to address the Defendants' alternative arguments.

6. In accordance with the choice-of-law provision in the Lease, this claim is governed by the law of Michigan.

7. Although the Defendants have not so argued, one might argue that Plaintiff's deposition testimony in that regard is hearsay, since the Plaintiff relates what he was told by an employee of Arnold. Thus, that testimony constitutes an out of court statement offered to prove the truth of the matter asserted. *See*

Fed.R.Evid. 801(c). However, an argument exists that Plaintiff's testimony in that regard was not hearsay, pursuant to Fed.R.Evid. 801(d)(2)(D), since Plaintiff's theory is that Arnold was acting as Credit's agent. Given that this case is before the Court on the Defendants' Motion for Summary Judgment, the Court must construe the evidence most strongly in favor of the Plaintiff, a construction which accepts Plaintiff's agency theory. In addition, the Defendants have not argued that the Plaintiff's deposition testimony concerning the statement by Arnold's employee is hearsay and cannot be considered by the Court. Thus, Plaintiff has been denied the opportunity to refute such an argument. Therefore, the Court deems it appropriate to consider the Plaintiff's testimony.

sue of material fact concerning the Plaintiff's breach of contract claim.

Alternatively, Defendants argue that even if Credit breached the Lease, the Plaintiff's recovery is limited to $100.00, since he failed to mitigate his damages.[8] In his Complaint, the Plaintiff alleges that he is entitled to recover compensatory damages in the sum $20,523.45. According to the Plaintiff, that amount represents the value of the car that he had a contractual right to purchase for the sum of $13,-340.70. When he was deposed, the Plaintiff testified that he believed that the amount of compensatory damages he was seeking to recover was based upon the difference between $13,340.70, and the amount it would have cost him to purchase a comparable automobile. Plaintiff's Dep. at 57–58. Defendants argue that the Plaintiff should have exercised reasonable care to mitigate that type of loss, by paying the additional $100.00, obtaining the automobile and suing for the excess amount he was being required to pay. The Plaintiff argues that Defendants have twisted the doctrine of mitigation of damages, since they breached the Lease by attempting to extract the additional $100.00 fee from him. In addition, the Plaintiff contends that it was not possible for him to mitigate his damages, since, at the time he attempted to close the purchase, the documents had been improperly prepared (the additional $100.00 charge being included with the purchase price, rather than being listed on a separate line as a documentation fee). For reasons which follow, this Court concludes that the evidence does not raise a genuine issue of material fact as to whether the Plaintiff failed to mitigate his damages.

■ In a breach of contract case, under the law of Michigan, " 'the injured party must make every reasonable effort to minimize the damages suffered.' " *Goodwin, Inc. v. Coe,* 62 Mich.App. 405, 407, 233 N.W.2d 598, 600 (1975) (quoting *McCullagh v. Goodyear Tire & Rubber Co.,* 342 Mich. 244, 255, 69 N.W.2d 731, 737 (1955)). The party claiming that the injured party failed to mitigate his damages bears the burden of proof. *Lorenz Supply Co. v. American Standard, Inc.,* 100 Mich. App. 600, 610, 300 N.W.2d 335, 339 (1980), *affirmed,* 419 Mich. 610, 358 N.W.2d 845 (1984).

■ This dispute arose out of the Plaintiff's desire to exercise his contractual right to purchase an automobile, which he was then leasing. The Plaintiff had the opportunity to purchase that automobile, albeit for $100.00 more than the amount stipulated in his contract. If he had gone forward with that purchase, he would have limited his actual damages to $100.00. As a result of not doing so, he claims to be entitled to recover the value of the Mazda Miata, alleged to be in excess of $20,000. Initially, the Plaintiff decided to go through with the transaction, even though he was understandably upset when he learned about the additional amount. He obtained financing and even attended the closing. Yet, he refused to close the transaction, because the additional $100.00 he was being charged appeared as part of the total purchase price, rather than upon a separate line as a documentation fee. *See* Plaintiff's Dep. at 36. In other words, the fact that he was being charged an additional $100.00 did not cause the Plaintiff to abandon his plans to purchase the Mazda Miata. Simply stated, a party does not "make every reasonable effort to minimize" his damages, when he foregoes the opportunity to reduce his damages by a factor of over 200,[9] yet refuses to do so because an item is, in his opinion, listed on

---

**8.** This argument is directed to all of Plaintiff's claims. This Court addresses it at this point, because it has concluded that the Defendants have failed to demonstrate the absence of a genuine issue of material fact concerning the Plaintiff's claim of breach of contract.

**9.** Plaintiff's damages would have been capped at $100.00, if he had closed the transaction, while he claims that Credit's breach of the Lease caused him to suffer in excess of $20,-000.

the incorrect line on the closing document for a transaction. The Plaintiff has not argued that signing the improperly prepared document would have caused him to suffer any type of negative consequence (financial or otherwise), above and beyond the $100.00 which he had by then agreed to pay. Consequently, the Court concludes that the evidence does not raise a genuine issue of material fact as to whether the Plaintiff mitigated his damages. Rather, the uncontroverted evidence establishes, as a matter of law, that he did not.

Accordingly, the Court overrules in part and sustains in part the Defendants' Motion for Summary Judgment (Doc. # 22), as that motion relates to Plaintiff's breach of contract claim, the Second Claim for Relief in his Complaint. The Court overrules same to the extent Defendants seek summary judgment as to Credit's liability on that claim, and sustains same to the extent that the Credit argues that the Plaintiff failed to mitigate his damages and can recover no more than $100.00.

### 3. Fraud Claim (Third Claim for Relief)

The Plaintiff's fraud claim is predicated upon the theory that Credit, through Arnold, misrepresented that he would be required to pay only $13,340.70, to purchase the Mazda Miata.[10] According to the Plaintiff, that representation proved to be false, because he would have been required to pay an additional $100.00 to purchase that automobile. As an initial matter, this Court must decide whether this tort claim is governed by the law of Michigan or of Ohio. The Sixth Circuit has indicated that choice-of-law principles for contract and tort claims are not necessarily the same. *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818 (6th Cir.1990). Therein, the plaintiff, an attorney who was practicing law in Ohio, alleged that he had entered into an

agreement with the defendants, a Pennsylvania law firm and its members, whereby he would refer six cases pending in Pennsylvania to the defendants in exchange for 50% of the contingent fees recovered. The plaintiff set forth claims for breach of contract and fraud. The District Court concluded that Ohio's choice-of-law rules mandated the application of Pennsylvania law. To reach that conclusion, the District Court had applied only Ohio's choice-of-law principles pertaining to suits for breach of contract. After summary judgment had been granted in favor of the defendants, the plaintiff appealed. The Sixth Circuit initially noted that the Ohio Supreme Court has applied the analysis of the Restatement (Second) of the Law of Conflicts to resolve choice-of-law questions. *Id.* at 820. The Sixth Circuit then concluded that the District Court had "erred in failing to recognize that [plaintiff's] fraud claim derives from tort law, and that the Restatement of Conflicts mandates a different choice-of-law analysis to determine which state's law applies to a tortious fraud claim." *Id.* Applying the analytical framework contained in the Restatement, the Sixth Circuit concluded that the law of Ohio was applicable to the plaintiff's fraud claim, since the allegedly fraudulent representations had occurred in Ohio, which created a presumption that the law of Ohio was applicable. *Id.* at 821. The Sixth Circuit also held that the presumption had not been overcome, because no other state had a more significant relationship with that claim. *Id.* The Sixth Circuit, however, agreed with the District Court that the law of Pennsylvania was applicable to the plaintiff's breach of contract claim. *Id.* at 821–22.

■ Herein, the allegedly fraudulent misrepresentations, upon which Plaintiff bases his fraud claim, occurred in the state

---

**10.** During his deposition, the Plaintiff testified that friends had warned him to be careful about hidden costs at the end of an automobile lease. Plaintiff's Dep. at 16. Therefore, he asked Arnold's salesman whether there would be any additional costs. He alleges that he was told that there would not be any charges that were not reflected in the Lease. *Id.*

of Michigan, when he entered into the Lease with Arnold. Therefore, there is a presumption that Michigan law is applicable to the Plaintiff's fraud claim. Moreover, that presumption has not been rebutted, given that the Plaintiff resided in Michigan when the allegedly fraudulent misrepresentations were made. In addition, Arnold, the party allegedly making those misrepresentations, had its place of business in that state. Accordingly, this Court will apply the law of Michigan to the Plaintiff's fraud claim.

In *Scott v. Harper Recreation, Inc.*, 444 Mich. 441, 506 N.W.2d 857 (1993), the Michigan Supreme Court restated the elements of the common law tort of fraud:

> "The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery." *Hi–Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976), quoting *Candler v. Heigho*, 208 Mich. 115, 121, 175 N.W. 141 (1919).

*Id.* at 446, 506 N.W.2d at 860. The Defendants argue that Credit is entitled to summary judgment on this claim, because the alleged misrepresentation (that the Plaintiff would be required to pay only the amount set forth in the Lease) related to a future event. According to the Defendants, a fraud claim is actionable under the law of Michigan, only if the misrepresentation relates to past or present facts. In *Cook v. Little Caesar Enterprises, Inc.*, 972 F.Supp. 400 (E.D.Mich.1997), the Dis-

trict Court discussed the law of Michigan in that regard:

> It is well settled, however, that under Michigan law, in order "to establish fraud 'the statements alleged to be false must relate to past or existing facts, and not to a future promise or expectation.'" *Two Men and a Truck v. Two Men and a Truck*, 955 F.Supp. 784 (W.D.Mich. 1997) (quoting *Haque Travel Agency, Inc. v. Travel Agents Int'l, Inc.*, 808 F.Supp. 569, 572 (E.D.Mich.1992)). In *Hi–Way v. Int'l Harvester*, 398 Mich. 330, 247 N.W.2d 813 (1976), the Supreme Court of Michigan affirmed the Court of Appeals' reversal of judgment for the plaintiffs in a case strikingly similar to the instant case. In *Hi–Way*, plaintiff, a car and truck dealer, sought to become a franchisee of defendant, a nationwide car and truck dealer. During negotiations for a franchise in the Alpena area, plaintiff claimed that defendant assured him that no other franchise would be granted in that area. Thereafter, plaintiff signed a franchise agreement which made no mention of the exclusivity agreement and moreover contained an integration clause similar to the instant clause. *Id.* at 333–35, 247 N.W.2d 813, 393 Mich. 333, 224 N.W.2d 879. The Supreme Court of Michigan reaffirmed the rule that "an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact. Future promises are contractual and do not constitute fraud." *Id.* at 336, 224 N.W.2d 879. In *Macklem v. Fales*, 130 Mich. 66, 89 N.W. 581 (1902), the Supreme Court stated:

> > Since a fraud must relate to facts then existing or which have previously existed, the general rule is that fraud cannot be predicated upon statements promissory in their nature and relating to future actions, nor upon the mere failure to perform a promise, or an agreement to do something at a future time, or to make good subsequent conditions which have been as-

sured. Nor, it is held, is such nonperformance alone even evidence of fraud. Reasons given for this rule are that a mere promise to perform an act in the future is not, in a legal sense, a representation, and a failure to perform it does not change its character. Moreover, a representation that something will be done in the future, or a promise to do it, from its nature cannot be true or false at the time when it is made. The failure to make it good is merely a breach of contract, which must be enforced by an action on the contract, if at all.

*Id.* at 410.[11] *Accord, Central On Line Data Sys., Inc. v. Filenet,* 1996 WL 483031 (6th Cir.1996) ("It is well-established in Michigan that the misrepresentations alleged in a fraud claim cannot be mere future promises, as opposed to misrepresentations of present or past fact. While future promises can form the basis of an action for breach of contract, they cannot give rise to a claim for fraud.").

■ As is indicated, the Plaintiff contends that Credit, through Arnold, misrepresented the amount he would have to pay to purchase the Mazda Miata at the end of the lease. As the Plaintiff points out, the Lease expressly provided that he could purchase the automobile for $13,340.70. In addition, during his deposition, the Plaintiff testified that he had asked Arnold's salesman whether there would be any additional charges at the end of the Lease and was told that he would not have to pay any charges that were not reflected in the Lease. Assuming for present purposes that these representations were false, they all relate to an event that would occur in the future, the cost to the Plaintiff if he were to exercise his contractual right to purchase the Mazda Miata at the end of the Lease. It bears emphasis that such a transaction would not happen until three years after the Plaintiff had entered into that agreement. Therefore, this Court concludes, in accordance with the law of Michigan, that the Plaintiff does not have an actionable claim of fraud.

Accordingly, the Court sustains the Defendants' Motion for Summary Judgment (Doc. #22), as it relates to the Plaintiff's claim of fraud, the Third Claim for Relief in his Complaint.

### 4. Claim of Conversion (Fourth Claim for Relief)

■ With this claim, the Plaintiff alleges that Credit committed the common law tort of conversion by repossessing the Mazda Miata on June 12, 1997, approximately two weeks after the Lease had terminated. As with the Plaintiff's fraud claim, this claim is not necessarily governed by the choice-of-law provision in that document. In *Charash v. Oberlin College,* 14 F.3d 291, 296–97 (6th Cir.1994), the Sixth Circuit decided the issue of whether Ohio law was applicable to the plaintiff's common law claim of conversion. After examining Ohio's choice-of-law principles, the Sixth Circuit concluded that the law of Ohio must be applied, because the conversion allegedly occurred in Ohio and no other state had a more significant relationship with that occurrence. Herein, Credit allegedly converted the Mazda Miata within the state of Ohio. Although Credit analyzes this claim under the law of both Ohio and Michigan, the latter state does not have a more significant relationship with the alleged conversion than Ohio. When the automobile was taken, the Plaintiff resided within Ohio. Michigan had no relationship with that transaction or to Credit, since it is a citizen of New York (the state of its incorporation) and Tennes-

---

11. In *Cook,* the plaintiff was a franchisee of the defendant. The plaintiff alleged that a representative of the defendant had stated that the defendant would not, in the future, locate competing franchises within a particular geographic area and that the statement had proved to be false. The District Court concluded that the alleged misrepresentation concerned a future event and, therefore, was not actionable as fraud under the law of Michigan.

see (the location if its principal place of business).[12] *See* Doc. # 1 at ¶ 3(b). Given that the alleged conversion occurred in Ohio and, further, since no state had a more significant relationship to that occurrence, this Court concludes that the law of Ohio is applicable.

In *Lynch v. Myers,* 1985 WL 7061 (Ohio App.1985), the court indicated that "[o]ne of the essential elements of a plaintiff's case for conversion is proof of title to or a right to possession of the converted property. *Fayette Inv. Corp. v. Jack Johnson Chevrolet Co.* (1963), 119 Ohio App. 111, 113, 197 N.E.2d 373; *Pennington v. First Discount Corp.* (1951), 89 Ohio App. 384, 387, 102 N.E.2d 469." *Accord, Charash,* 14 F.3d at 296; *Levens Corp. v. Aberth,* 1993 WL 28574 (1993). Herein, the Plaintiff has not presented evidence tending to raise a genuine issue of material fact as to whether he had title to or a right to possession of the Mazda Miata. On the contrary, the uncontradicted evidence before the Court demonstrates that the Plaintiff did not have title to or the right to possession of that vehicle. To support their Motion for Summary Judgment (Doc. # 22), the Defendants have supplied the affidavit of Sherry Ide ("Ide"), a legal assistant employed by Credit. Attached to and authenticated by that affidavit is a certificate of title, demonstrating that Credit was the owner of the automobile. In addition, Ide states that Credit continued to own the vehicle until it was sold at auction. Moreover, the Lease expressly provided that the Lessee (Plaintiff) was required to return the vehicle, at the end of that agreement. In addition, the Plaintiff acknowledged during his deposition that he understood that upon entering into the Lease, the vehicle would have to be returned by May 26, 1997, three years after that agreement had been executed.

Plaintiff has not presented any evidence which would tend to refute the foregoing. Nevertheless, he argues that he has a valid claim of conversion, because Credit breached the contract between the parties, by requiring him to pay more to purchase the automobile than had been specified in the Lease. Above, this Court has concluded that said action could have constituted a breach of contract, giving rise to a claim for damages by the Plaintiff. However, he has not cited a single case that would support the proposition that a person who has a contractual right to buy an automobile for $13,340.70, becomes the owner of that property, merely because the seller had attempted to require the buyer to pay an additional $100.00.

Accordingly, the Court sustains the Defendants' Motion for Summary Judgment (Doc. # 22), as it relates to Plaintiff's common law claim of conversion, the Fourth Claim for Relief in his Complaint.

As a result of the rulings herein, Plaintiff's only remaining claim is his breach of contract claim. The Court has agreed with the Defendants that the Plaintiff failed to mitigate his damages and that, as a result, his maximum potential recovery for this claim is $100.00. Although the issue has not been raised, this Court has concerns as to whether the Plaintiff is entitled to recover even that amount. This figure is derived from the additional amount Arnold was charging the Plaintiff to purchase the automobile; however, since the Plaintiff decided not to complete the transaction, it is difficult to understand how he could have been damaged by the additional charge. To resolve that question, before this case proceeds to trial, the Court directs the Defendants to address that issue in a supplemental motion for summary judgment, to be filed within 20 days from date. The parties may thereafter brief that motion in accordance with S.D. Ohio Civ. R. 7.2(a)(2).

---

12. The Defendants do not argue that either New York of Tennessee had a more significant relationship with the alleged conversion than Ohio.